**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**SAN ANGELO DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| **MELINDA J. ALDEN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 6:04-CV-027-C** |
| | § | |
| | § | |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the court upon Plaintiff's complaint filed April 22, 2004, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's application for supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff filed a brief in support of her complaint on January 11, 2005, Defendant filed her brief on February 10, 2005, and Plaintiff filed her reply on March 14, 2005. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Complaint with prejudice.

### I.   STATEMENT OF THE CASE

Plaintiff filed an application for supplemental security income benefits on June 21, 1999, with a protective filing date of February 23, 1999, alleging disability beginning July 4, 1989. Tr.

13, 47.  Plaintiff's application was denied initially and upon reconsideration.  Tr. 13, 62-67, 70-72.

Plaintiff filed a Request for Hearing by Administrative Law Judge on March 9, 2000, and this matter

came for hearing before the Administrative Law Judge ("ALJ") on October 19, 2000.  Tr. 73-74,

487-503.  Plaintiff, represented by a non-attorney, testified in her own behalf.  Tr. 491-96.  Carol

Bennett, a  vocational expert ("VE"), appeared and testified as well.  Tr. 496-502.  The ALJ issued

a decision unfavorable to Plaintiff on December 20, 2000.  Tr. 45-56.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a

disability within the meaning of the Social Security Act.  Tr. 47.  He found that an earlier

determination on February 10, 1993, was binding under the doctrine of *res judicata* and further

found no basis for reopening the prior application filed on June 29, 1992.  *Id*.  The ALJ's decision

therefore refers to the period from February 23, 1999, the protective filing date, through December

20, 2000, the date of his decision.  *Id*.

The ALJ found that Plaintiff has "severe" impairments, including status post spina bifida,

scoliosis of the thoracic spine, status post back injury with sequelae of low back and right leg pain,

sacroiliac joint pain, status post laminectomy, and panic disorder with agoraphobia.  Tr. 49, 54.  He

further found that Plaintiff's severe impairments, singularly or in combination, were not severe

enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R.

Part 404, Subpt. P, App. 1.  *Id*.  The ALJ noted that he had given special consideration to sections

1.05, 12.04, and 12.06 of the Listing of Impairments.  Tr. 49.  Therefore, the ALJ was required to

determine whether Plaintiff retained the residual functional capacity ("RFC") to perform her past

relevant work or other work existing in the national economy.  Tr. 49-54.

The ALJ noted that RFC is an assessment of an individual's ability to do sustained work-

related physical and mental activities in a work setting on a regular and continuing basis.  Tr. 51.

He found that Plaintiff retained the RFC to perform work at the light exertional level.  *Id*.  He further

found that Plaintiff had no restrictions of activities of daily living, demonstrated by her ability to care for her personal needs, cook, and clean house; had moderate difficulties in maintaining social functioning as shown by her agoraphobia; had moderate deficiencies of concentration, persistence, or pace, resulting in failure to complete tasks in a timely manner; and had no episodes of decompensation. *Id.* The ALJ found that Plaintiff's ability to perform work at the light exertional level that was limited to jobs involving only occasional stooping and crouching, simple and routine instructions, and only incidental contact with the public should accommodate her back impairments, her hip pain, and her mental impairments. *Id.*

The ALJ further found that Plaintiff's allegations of totally disabling pain of the lower back and her descriptions of her limitations were not fully credible or consistent with the record. Tr. 52. He specifically noted that the pain experienced by Plaintiff was limiting but was not severe enough to preclude all types of work. *Id.* The ALJ also noted that Plaintiff's activities of daily living did not reflect one who was markedly limited because of her back pain or mental impairments and further noted that Plaintiff's weak work record indicated that she was poorly motivated to work. *Id.*

The ALJ found that Plaintiff has past relevant work as a convenience store clerk, deli clerk, and preparation cook. Tr. 53. He found that Plaintiff retained the RFC to return to her past relevant work as a preparation cook, relying upon the testimony of the VE, who indicated that such work was light and unskilled as generally performed in the national economy. *Id.* Therefore, the ALJ found that Plaintiff was not disabled at any time through the date of his decision.

In the alternative, the ALJ found that if Plaintiff was unable to return to her past relevant work as a preparation cook, it would be necessary to determine whether Plaintiff was capable of making a vocational adjustment to other work despite her severe impairments. Tr. 53-55. The ALJ relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy,

including the jobs of assembly worker described as unskilled light work, with 7,000 jobs in Texas and 112,000 nationally; and assembly worker described as unskilled sedentary work, with 4,500 jobs in Texas and 80,000 jobs nationally. *Id*. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 54, 55.

Plaintiff submitted a Request for Review of Hearing Decision/Order on February 28, 2001, which was not filed on time. Tr. 88-91. Plaintiff also filed a new claim on April 13, 2001. Tr. 60. On July 24, 2003, the Appeals Council vacated its prior action dismissing the request for review because it determined that the request was, in fact, timely filed, consolidated the two claims, and remanded this matter to the ALJ for further development. Tr. 59-61.

A second hearing was held on September 10, 2003. Tr. 504-36. Plaintiff, again represented by a non-attorney, testified in her own behalf. Tr. 507-24. A witness, Frank Stewart, also appeared and testified. Tr. 524-31. Carol Bennett, a vocational expert ("VE"), appeared and testified as well. Tr. 531-35. The ALJ issued a decision unfavorable to Plaintiff on October 30, 2003. Tr. 10-22.

In his opinion the ALJ noted that the decision addressed Plaintiff's consolidated applications. Tr. 13. He noted that although Plaintiff alleged disability onset as of July 4, 1989, the issue for SSI purposes is whether she was under a disability as of, or subsequent to, her protective filing date of February 23, 1999. Tr. 14.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since February 23, 1999. Tr. 14. He found that she had severe impairments, including degenerative disk disease in the lumbar spine with radiculopathy, thoracic spina bifida with scoliosis, and a panic disorder with agoraphobia. Tr. 15. He found that these impairments were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt.

P, App. 1.  *Id.*   The ALJ also noted that Plaintiff sustained a fractured left clavicle in November 2001, which he found was not severe under the applicable regulations.  *Id.*

The ALJ thereafter turned to the RFC assessment.  He found that Plaintiff retained the RFC to perform light work activity, limited to work that allows for the option of sitting or standing while performing work duties; that does not require any crawling, climbing ladders or scaffolds; that only involves occasional crouching, stooping, or kneeling; and that involves no more than simple repetitive tasks with no more than incidental contact with the public.  Tr. 18.  The ALJ discussed Plaintiff's medical history and found that her statements concerning her impairments and their impact on her ability to work were not entirely credible in light of the medical evidence.  *Id.*  He found that her mental impairments imposed mild restrictions in accomplishing daily living activities; moderate difficulty in maintaining social functioning; and mild difficulty in maintaining pace and concentration; and he noted no record of any episodes of decompensation in work-like settings.  *Id.*  He further found that Plaintiff has physically experienced a general diminishment of physical capability due to her back impairments and associated pain.  Tr. 18.  The ALJ found that Plaintiff's physical and mental impairments were not incompatible with the performance of certain levels of sustained work activity.  *Id.*

The ALJ concluded that Plaintiff is not able to return to any of her past relevant work.  Tr. 19, 20. Relying on the testimony of the VE, the ALJ found that Plaintiff could perform work which exists in the national economy, including the jobs of small parts assembler, with 8,000 jobs in Texas and 141,000 nationally; hand packer, with 5,000 jobs in Texas and 203,000 nationally; and grader/sorter, with 3,000 jobs in Texas and 65,000 jobs nationally.  *Id.*  The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision.  Tr. 20, 21.

On April 22, 2004, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.    STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

 In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271;

*Newton*, 209 F.3d at 453.  In this case, the ALJ found at step 5 that Plaintiff was not disabled because she retained the ability to perform work in the national economy.  Tr. 20, 21.

## III.   DISCUSSION

Plaintiff claims that the ALJ's RFC assessment is not supported by substantial evidence. Plaintiff argues that the ALJ erred in evaluating her mental impairments and RFC by failing to appropriately consider the opinions of the state agency medical consultants ("SAMCs"), Plaintiff's treating psychiatrist, and the psychiatric consultative examiner ("CE") and by failing to incorporate the limitations noted by these physicians into his RFC assessment.

**A.     Whether the ALJ's erred by failing to appropriately consider the opinions of the SAMCs.**

Plaintiff argues that the ALJ's RFC assessment is not supported by the opinions of the SAMCs.  She notes that the SAMCs completed mental residual functional capacity assessment forms which indicated that Plaintiff was impaired in following detailed instructions and interacting with the public.

The ALJ found that Plaintiff could perform no more than simple tasks and could have no more than incidental contact with the public.  Plaintiff argues that this mental RFC finding does not reflect the limitations noted by the SAMCs, particularly in terms of contact with coworkers.

The ultimate issue is whether the ALJ's decision is supported by substantial evidence.  The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

The record demonstrates that Dr. A. Boulos, one of the SAMCs, completed a psychiatric review technique form which indicated by checkmark that an RFC assessment was necessary, based on affective disorders and anxiety-related disorders.  Tr. 435-48.  The degree of resulting functional

limitations was also noted by checkmark.  Tr. 445.  Dr. Boulos indicated that under the part "b" criteria, Plaintiff was mildly restricted in her activities of daily living, moderately limited in maintaining social functioning, moderately limited in maintaining concentration, persistence, or pace, and had no episodes of decompensation.  Tr. 459.  He completed a mental residual functional capacity assessment form which indicated by checkmark the degree of various limitations caused by Plaintiff's mental impairments in more detail.  Tr. 463-66.   He opined that Plaintiff was moderately limited in several areas, including the ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to interact appropriately with the general public; and the ability to get along with coworkers, accept instructions, and respond appropriately to supervisors.  *Id.*  Dr. Boulos explained his opinion more fully by noting that the "claimant retains the abilities to understand and carry out simple instructions, to interact with coworkers and supervisors, and to adapt to routine challenges in the work setting."  Tr. 465.

Dr. Jim L. Cox, in completing the mental residual functional capacity assessment form, indicated that Plaintiff was moderately limited in several areas, including some of the same limitations noted by Dr. Boulos as well as the ability to perform activities within a schedule and maintain regular attendance; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions; the ability to respond appropriately to changes in the work setting; and the ability to set realistic goals or make plans independently of others.  Tr. 466-68.  Dr. Cox opined, after completing the summary conclusions, that "claimant is capable of performing unskilled tasks, of relating appropriately to supervisors and coworkers, and of responding appropriately to changes in the routine workplace."  Tr. 469.

Dr. Stephen D. Drake, another SAMC, completed a mental residual functional capacity assessment form on October 26, 1999.  Tr. 225-27.  Dr. Drake indicated under the summary conclusions that Plaintiff was moderately limited in the ability to remember and understand detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to work in coordination with or in proximity to others without being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms; to interact with the general public; to get along with coworkers; to respond appropriately to changes in the work setting; to travel in unfamiliar places or use public transportation; and to set realist goals or make plans independently of others.  Tr. 225-26.  Dr. Drake explained his findings, opining that "claimant retains the ability to understand and follow simple instructions, to adequately interact with coworkers and supervisors, and to adapt to limited routine work environments with limited social interaction."  Tr. 227.  Dr. Medhi Sharifian indicated his agreement with Dr. Drake's assessment.  *Id.*

Plaintiff correctly notes that the SAMCs all indicated in their summary conclusions that Plaintiff's ability to follow detailed instructions and interact with the general public was impaired.  Pl. Brief at 12.  This is consistent with the ALJ's finding that Plaintiff can perform "no more than simple repetitive tasks" and have "no more than incidental contact with the public."  Tr. 18.  Plaintiff argues that the ALJ erred by failing to include a limitation on maintaining concentration and attention for extended periods or on interacting with coworkers in this mental RFC assessment, noting that the SAMCs all indicated such impairment in their summary conclusions on the mental residual functional capacity assessment forms.

Pursuant to Soc. Sec. Ruling 96-6p (July 2, 1996)("SSR 96-6p"), the findings of fact made by SAMCs regarding the nature and severity of an individual's impairment  "must be treated as expert opinion evidence of nonexamining sources" by the ALJ.  SSR 96-6p.  The ALJ is "not bound

by findings made by State agency or other program physicians and psychologists, but [he] may not ignore these opinions and must explain the weight given to the opinions in their decisions." *Id*. However, the opinions of SAMCs "can be given weight only insofar as they are supported by evidence in the case record."

In his decision the ALJ noted that he had reviewed the initial and reconsideration determinations of the SAMCs. Tr. 20. He indicated his consideration of such opinions under SSR 96-6p. *Id*. He indicated his finding of limitations under the part "b" criteria, including mild restriction in the activities of daily living; moderate difficulties in social functioning; mild deficiencies of concentration, persistence, or pace; and no episodes of decompensation. Tr.18. He noted that he found the opinions of the SAMC "significantly persuasive" and accorded them "substantial probative weight." Tr. 20. The ALJ concluded that Plaintiff's physical and mental impairments limited her to work at the light exertional level which allowed for sitting or standing while performing work duties; did not require any crawling, climbing of ladders or scaffolds; involved only occasional crouching, stooping, or kneeling; and involved no more than simple, repetitive tasks with no more than incidental contact with the public. *Id*.

Plaintiff argues that the ALJ did not effectively grant "substantial probative weight" to the opinions of the SAMCs because he failed to incorporate limitations on maintaining attention and concentration and on interacting with coworkers in his mental RFC finding. However, despite indicating by checkmark that Plaintiff was limited in these areas, Dr. Boulos opined that "claimant retains the abilities to understand and carry out simple instructions, to interact with coworkers and supervisors, and to adapt to routine challenges in the work setting." Tr. 465. Dr. Drake, with Dr. Sharifian in agreement, opined that "claimant retains the ability to understand and follow simple instructions, to adequately interact with coworkers and supervisors, and to adapt to limited routine work environments with limited social interaction." Tr. 227. Dr. Cox opined that "claimant is

capable of performing unskilled tasks, of relating appropriately to supervisors and coworkers, and of responding appropriately to changes in the routine workplace." Tr. 469.  Each of these SAMCs opined that Plaintiff could understand and carry out simple instructions (or, according to Dr. Cox, perform unskilled tasks) and could interact with coworkers and supervisors.   These opinions are consistent with the ALJ's determination that Plaintiff's mental impairment limited her RFC to simple, repetitive tasks with no more than incidental contact with the public.  Tr. 20.

Plaintiff argues that the ALJ should have provided an explanation for failing to give appropriate weight to the opinions of the SAMCs, applying the factors set forth in 20 C.F.R. § 416.927(d).  SSR 96-6p provides that although the ALJ is responsible for assessing an individual's RFC, he "must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant . . . . as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s)."  SSR 96-6p.  20 C.F.R. § 416.927(f) indicates that the ALJ must explain in the decision the weight given to the opinions of a SAMC.  *See* 20 C.F.R. 416.927(d).

It is, of course, the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion. *See* 20 C.F.R. §§ 416.946, 416.927(e).  The ALJ indicated in his opinion that he had accorded substantial probative weight to the opinions of the SAMCs.  The mental RFC finding, while not precisely reflecting the individual limitations noted by the SAMCs, was in fact consistent with the opinions of these consultants indicating that Plaintiff retained the ability to understand and carry out simple instructions and maintained the ability to appropriately interact with coworkers.  The ALJ found that Plaintiff was moderately limited in concentration persistence, or pace, evaluating her mental impairments under the part "b" criteria, but further indicated that the limitation to simple, repetitive work with no more than incidental contact with the public accommodated the limitations imposed by Plaintiff's mental impairments.

The ALJ considered the medical opinions of the state agency medical consultants in making his RFC determination, pursuant to SSR 96-6p. Tr. 20. The ALJ is not required to incorporate any specific limitations into his RFC assessment simply because it appears in a medical opinion. Rather, the ALJ has the sole responsibility for weighing the evidence, may choose whichever physician's diagnosis is most supported by the record, and may incorporate into the RFC assessment the limitations supported by that diagnosis or diagnoses. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). The ALJ also has the responsibility to resolve questions of credibility and questions arising from conflicting medical opinions. *Masterson*, 309 F.3d at 272. Defendant argues that the ALJ inherently applied the requirements of 20 C.F.R. § 416.927(f) and accorded such opinions weight insofar as they are supported by evidence in the record. The record demonstrates that the summary conclusions, indicated by checkmark, were, perhaps, not entirely congruent with the opinions expressed by the consultants as to the abilities of Plaintiff despite her mental impairments. However, the record demonstrates that the ALJ's mental RFC assessment does not conflict with the opinions of the consultants that are included in the assessment in narrative form. In this matter, I find that the ALJ appropriately considered the opinions of the SAMC in making his RFC assessment.

**B.      Whether the ALJ erred by failing to appropriately consider the opinions of Plaintiff's treating psychiatrist in making his RFC assessment.**

Plaintiff further argues that the mental RFC assessment of the ALJ is not supported by the opinion of Dr. Jim Mercer, Plaintiff's treating psychiatrist. Plaintiff notes that Dr. Mercer completed two medical source statements about Plaintiff's mental capabilities to perform work, in October 2000 and in September 2002.

In a Mental Impairment Questionnaire completed on October 18, 2000, Dr. Mercer noted that Plaintiff's symptoms included sleep disturbance, mood disturbance, emotional lability, social withdrawal or isolation, recurrent panic attacks, anhedonia, psychomotor agitation or retardation; feelings of worthlessness, decreased energy, and generalized persistent anxiety.  Tr. 244-48.  Dr. Mercer noted that he had treated Plaintiff since May 1, 1998, for a total of 17 visits.  Tr. 244.  He opined that Plaintiff's diagnosis included panic disorder with agoraphobia; major depression, severe, recurrent; and social phobia on Axis I.[1]  *Id.*  He indicated that Plaintiff's current Global Assessment of Functioning ("GAF") score[2] was 45,[3] with a GAF as high as 65[4] in the previous year.  *Id.*  In describing his clinical findings, Dr. Mercer noted that Plaintiff "has had severe panic attacks [with] g.i. distress," has had severe depression, and has ongoing anxiety.  Tr. 245.  He indicated that Plaintiff would be absent from work "more than three times a month," noting that she "still has frequent panic attacks."  Tr. 247.  He also opined that Plaintiff was markedly limited in all of the four areas under the part "b" criteria.  Tr. 247-48.

---

[1]    The axial system of evaluation enables the clinician to comprehensively and systematically evaluate a client.  *See generally, American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 25-30.  An Axis I diagnosis is used to report all clinical disorders except for personality disorders and mental retardation, which are reported on Axis II.  *Id.* at 27-28.

[2]    The GAF score on Axis V is for reporting the client's "psychological, social, and occupational functioning." *See American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.  This report of overall functioning is noted to be "useful in planning treatment and measuring its impact, and in predicting outcome." *Id.*

[3]    A GAF score of 41-50 indicates "serious symptoms" such as suicidal ideation, or any "serious impairment in social, occupation, or school functioning," such as inability to keep a job or having no friends. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

[4]    The DSM-IV defines a GAF of 61-70 as some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning, but generally functioning pretty well. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

In the second Mental Impairment Questionnaire that he completed on September 30, 2002, Dr. Mercer indicated that Plaintiff's current GAF was 50,[5] with 55 as her highest GAF score in the previous year.  Tr. 253.  He indicated by checkmark that Plaintiff was unable to meet competitive standards with regard to remembering work-like proceedings, understanding very short and simple instructions, understanding and remembering detailed instructions, and carrying out detailed instructions. Tr. 254-55.  He indicated that Plaintiff had "no useful ability to function" in setting realistic goals or making plans independently of others, in dealing with the stress of semiskilled and skilled work, in interacting appropriately with the general public, in maintaining socially appropriate behavior, in traveling to an unfamiliar place, and in using public transportation.  Tr. 255.  Dr. Mercer indicated that Plaintiff was seriously limited, but not precluded, from carrying out very short and simple instructions.  Tr. 254.  He indicated that Plaintiff was limited but satisfactory in adhering to basic standards of neatness and cleanliness.  Tr. 255.  He also indicated that Plaintiff had a residual disease process that resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause her to decompensate; she had a current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement; and she had complete inability to function independently outside the area of her home.  Tr. 256.  Dr. Mercer indicated that Plaintiff was markedly or extremely limited under all of the part "b" criteria and further indicated that Plaintiff "could not work."  Tr. 255-56.

In his opinion the ALJ noted that Plaintiff started to see Dr. Mercer for depression in 1997 and last saw him in September 2002.  Tr. 16.  He discussed Plaintiff's testimony about her treatment.

---

[5]    The DSM-IV defines a GAF of 51-60 as moderate symptoms (e.g. flat effect, circumstantial speech, and occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

*Id*.  He noted medical evidence indicating a diagnosis of panic disorder with agoraphobia in July 1999, as well as a GAF score of 55.  Tr. 17.  He noted that Plaintiff's mental health treatment providers prescribed a regimen of medications and psychotherapy, that the treatment records indicated that her mental impairment was kept stable, and that she was able to function well enough to carry out daily activities.  Tr. 18.  The ALJ noted that Plaintiff's treating physician, Dr. Mercer, opined that she was not able to work due to her mental impairment, and indicated that the reports of the treating physician could not be given great weight because they are inconsistent with the treatment records and are not based on objective clinical findings.  *Id*.

A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2).  On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence."  *Newton*, 209 F.3d at 456.

Under the applicable regulations, unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20 C.F.R. § 404.1527(d).  The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist." *Newton,* 209 F.3d at 456.

Plaintiff argues that the ALJ erred by failing to discuss and apply the factors set forth in 20 C.F.R. § 41.927(d) in discounting Dr. Mercer's opinions.  Plaintiff notes that the ALJ did not cite this regulation, nor did he cite to the relevant Social Security Rulings or to *Newton* or other decisions which pertain to the duty to weigh medical source statements from treating physicians.  Plaintiff

-15-

alleges that the ALJ should have given controlling weight to Dr. Mercer's opinions, and if he did give such weight to Dr. Mercer's opinions, he should have applied the appropriate analysis.

First, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003)(citing 20 C.F.R. § 404.1527(e)(1)). The ALJ did not improperly discount the opinion of Dr. Mercer insofar as he indicated that Plaintiff was "could not work" as these determinations are reserved to the Commissioner. *Id*.

The ALJ noted in his opinion that Dr. Mercer had treated Plaintiff between December 1997 and September 2002. Tr. 16. Dr. Mercer's December 8, 1997, progress note indicates Plaintiff's complaints of depression and panic attacks. Tr. 211. Dr. Mercer prescribed medication. Tr. 215A. A January 9, 1998, progress note indicates that Plaintiff felt overwhelmed at times and had panic attacks and depression, but her medications were working, she had more energy, and her thoughts were more organized. Tr. 209. He indicated that Plaintiff reported panic attacks twice a week in a bad week. *Id*. Dr. Mercer noted on January 30, 1998, that Plaintiff reported that she had some panic attacks and depression. Tr. 208. A progress note dated March 2, 1998, indicates that Plaintiff was not having full blown panic attacks and school was going okay. Tr. 206-07.

However, on April 2, 1998, Plaintiff reported that her panic attacks were worse without her Valium, which she had not taken for a month. Tr. 204. On August 10, 1998, Dr. Mercer noted that Plaintiff was going to have surgery and was very anxious and having panic attacks. Tr. 196-97. He noted Plaintiff's report that it was hard to get work and that she dreaded social events. Tr. 197. A December 31, 1998, progress note indicated that Plaintiff had several panic attacks and was working with friends who had a ranch, helping to care for the animals. Tr. 191. He opined that her GAF score was 60. Tr. 190. Dr. Mercer's progress notes indicate that on March 31, 1999, his impression

was of an Axis I diagnosis of panic disorder; major depression, recurrent, severe; and social phobia. Tr. 187.  He opined that Plaintiff's GAF score was 55.  He noted that Plaintiff reported that she still had some panic attacks, three to four times a month, and was doing ranch work, such as bottle-feeding calves.  Tr. 188.

Dr.  Mercer noted in his progress note dated July 30, 1999, that Plaintiff reported that her life has been going fairly well. Tr. 429.  She was frustrated about finding employment but was assisting an older lady a few times a week. Plaintiff indicated that it gets her out of the house, which helped. *Id.*  She was sleeping well at night and had one panic attack the previous night. *Id.*  Dr. Mercer opined that Plaintiff was "functioning fairly well at the present time."  *Id.*  He indicated that her past GAF was 55, and her current GAF was 60.  *Id.*  On October 19, 1999, Dr. Mercer noted that Plaintiff "has been doing fairly well over all, despite the fact she quit her job" and had some panic attacks with  an incident at her job.  Tr. 428.  Dr. Mercer again opined that Plaintiff's GAF score was 60. *Id.*  A progress note dated January 28, 2000, indicated that Plaintiff had been ill and was stressed after her son had been in an accident.  Tr. 426.  Nevertheless, he noted that Plaintiff appeared calm and cooperative and did not show any evidence of anxiety.  *Id.*  He opined that her GAF score was 65.[6]

On April 28, 2000, Dr. Mercer indicated in his treatment note that Plaintiff reported that she had been doing well, although she had been bothered by a person who had been convicted at the same time that she was.  Tr. 425.  Dr. Mercer noted that Plaintiff was calm and cooperative and did not appear depressed, although she still has panic at times.  *Id.*  He indicated a GAF score of 65.  *Id.* A progress note dated December 4, 2000, notes that Plaintiff was having some good days, lists her

---

[6]      The DSM-IV defines a GAF of 61-70 as some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning, but generally functioning pretty well. *American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) at 32.

Social Security hearing as a goal, and indicates that her GAF was 45. Tr. 419. A May 24, 2001, progress note indicates that Plaintiff's mother was pushing her to get a job, that Plaintiff was continuing to try to get disability, and that her GAF was 55. Tr. 418. Dr. Mercer noted on September 28, 2001, that Plaintiff's mother had a bilateral knee replacement and Plaintiff has had to do most of the shopping. Tr. 417. Plaintiff reported panicking in the store, going outside, and then going back inside the store to finish. *Id*. He opined that her GAF was 65. *Id.* On December 28, 2001, Dr. Mercer noted that Plaintiff was in a car accident and was panicky and also noted that she had anxiety secondary to the pain. Tr. 416. He indicated that her current GAF was 50. *Id.*

Plaintiff argues that Dr. Mercer's treatment records stand in full support of his October 2000 and September 2002 statements. However, the record demonstrates that Dr. Mercer repeatedly noted that Plaintiff was doing well, was calm and did not appear anxious despite stressful events in her life, was getting out of the house, and was dealing with other people. *See* Tr. 429 (life going fairly well, getting out of the house, one panic attack); 428 (doing fairly well overall although she quit her job; some panic attacks); 426 (calm and cooperative, no evidence of anxiety); 425 (doing well, did not appear depressed, still had some panic attacks). Moreover, the latter notes from Dr. Mercer indicated that Plaintiff's GAF score ranged from 60 to 65. Tr. 425-29. This contrasts markedly from his October 2000 indication of Plaintiff's GAF and functioning and even more so from his September 2002 statement, which indicated that Plaintiff is completely unable to function independently outside of her home and had no useful ability to function in various areas. Tr. 255-56. However, the record further demonstrates that the ALJ did not fail to "give *any* weight to the opinions of the claimant's treating specialist." *Newton,* 209 F.3d at 456 (emphasis supplied). The ALJ limited Plaintiff's RFC to work involving simple, repetitive tasks with no more than incidental contact with the public. Tr. 20. The ALJ accommodated those limitations noted by Dr. Mercer which were reflected in his own treatment notes and in the record as a whole. Plaintiff argues that

the ALJ erred by failing to apply the 20 C.F.R. § 416.927(d) factors when he failed to give controlling weight to Dr. Mercer's opinions regarding the limitations caused by Plaintiff's impairments expressed in the October 2000 and September 2002 forms that he completed. The ALJ specifically noted that Dr. Mercer was Plaintiff's treating physician, providing her with mental health treatment from 1997 through 2002. Tr. 16, 18. The ALJ did err in noting that Plaintiff was first diagnosed with panic disorder with agoraphobia in July 1999, but his opinion indicates that he considered the evidence of Plaintiff's mental impairments before that date, and there is nothing to demonstrate that this error was prejudicial. He discussed her treatment history, both in the context of Plaintiff's testimony and in discussing the other evidence in the record. He also extensively discussed the degree to which the evidence in the record was consistent. He did not err in determining that Dr. Mercer's opinion as to the limiting effects of Plaintiff's impairments was not entitled to great weight, where these opinions were inconsistent with Dr. Mercer's own treatment notes and with other evidence in the record.

I find that the ALJ did not entirely reject the opinions of Dr. Mercer but rather incorporated into his RFC analysis those limitations most supported by Dr. Mercer's own treatment notes which were supported by the record. While ALJ did not specifically cite to *Newton* or to the relevant Social Security Rulings or to the factors set forth 20 C.F.R. 416.927(d), I find that his opinion demonstrates that he adequately considered these factors in weighing Dr. Mercer's opinion. Moreover, the ALJ specifically noted that he did not accept those opinions of Dr. Mercer indicating that Plaintiff was unable to work insofar was they were not based on objective medical clinical findings and were inconsistent with his treating records. I find that the ALJ did not err in considering the opinions of Dr. Mercer, Plaintiff's treating psychiatrist, nor did he err by failing to adopt Dr. Mercer's opinions on the limitations imposed by Plaintiff's impairments where such opinions were not consistent with Dr. Mercer's treating records or the record as a whole.

**C.**     **Whether the ALJ erred by failing to incorporate the opinion of the consultative psychiatrist that Plaintiff should be limited to benign supervision.**

Plaintiff argues that the ALJ erred by failing to include a limitation to benign supervision, as set forth in the opinion of the consultative examiner.  Plaintiff argues that the ALJ is not free to "pick and choose" only those medical opinions which support his position.

The record demonstrates that the ALJ considered the opinion of the psychiatric CE.  Tr. 18.  Moreover, he specifically noted that the medical record indicated "that so long as the claimant is not required to have much contact with other people[,] especially the public, she is capable of some kind of work activity."  Tr. 18.  This is consistent with the CE's report.  Tr. 366.  The ALJ did not accept the opinion of the CE that Plaintiff required "benign supervision."  *Id.*  However, the ALJ appropriately exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record.  *Muse*, 925 F.2d at 790.  The task of weighing the evidence is the province of the ALJ.  *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).  The relative weight to be given these pieces of evidence is within the ALJ's discretion.  *Id.*  The limitation on contact with the general public is consistent with the reports of Dr. Mercer, the SAMC, and the psychiatric CE.  However, other sources in the record did not indicate that Plaintiff required benign supervision.  I find that the ALJ did not err in weighing the evidence and in deciding not to incorporate a limitation to benign supervision into his RFC finding.

Therefore, I find that the ALJ's mental RFC finding and his decision are supported by substantial evidence in the record.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections no later than September 29, 2005. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation on or before September 29, 2005, shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 15th day of September, 2005.

**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**